**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ROBERT LOGAN,

               Plaintiff,

      v.                            No. 9:16-CV-1412
                                      (FJS/CFH)

A. HARVEY,

               Defendant.

_____

**APPEARANCES:**                   **OF COUNSEL:**

Robert Logan
03-A-0391
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562
Plaintiff pro se

HON. ERIC T. SCHNEIDERMAN      MATTHEW P. REED, ESQ.
Attorney General for the            Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Robert Logan ("plaintiff"), an inmate who was, at all relevant times, in

_____

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that defendant A. Harvey – who at all relevant times was employed at Great Meadows Correctional Facility ("Great Meadows") – violated his rights under the Fourteenth Amendment. <u>See</u> Dkt. No. 1 ("Compl."). Presently pending before the Court is defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Dkt. No. 21. Plaintiff filed a response in opposition to the motion. Dkt. No. 23. For the following reasons, it is recommended that defendant's Motion to Dismiss be granted.

## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II <u>infra</u>. At all relevant times, plaintiff was an inmate at Great Meadows. All but plaintiff's Fourteenth Amendment due process claim was dismissed upon this Court's initial review of the complaint pursuant to 42 U.S.C. § 1915(e). <u>See</u> Dkt. No. 9.

On February 2, 2014, C.O. Lovely issued plaintiff a misbehavior report alleging that he had engaged in lewd conduct (101.20), refused a direct order (106.10), and interfered with employee (107.10) stemming from plaintiff allegedly masturbating in his cell. Compl. ¶ 7. On February 14, 2014, Hearing Officer ("H.O.") Harvey conducted off-record interviews with randomly selected inmates regarding whether they had witnessed the incident. <u>Id.</u> ¶ 11. On February 14, 2014, H.O. Harvey convened a Tier III disciplinary hearing regarding the institutional violations and found plaintiff guilty on all counts. <u>Id.</u> ¶ 13. In making his

determination, H.O. Harvey "relied on Officer K. Lovely's prior masturbation allegation that is uncontested by any misbehavior report, log book entry or supervisor notification to determine guilt." Id. Plaintiff received ninety days Secure Housing Unit ("SHU")[2] confinement and ninety days loss of privileges. Id. ¶ 16. On March 17, 2014, plaintiff's SHU confinement was modified to sixty days for good behavior. Id. ¶ 17. On April 23, 2014, DOCCS affirmed plaintiff's administrative appeal of his disciplinary hearing, as modified. Id. ¶ 18. On January 9, 2015, plaintiff's February 14, 2014 Tier III disciplinary hearing determination was administratively reversed. Id. ¶ 19. Plaintiff contends that during his sixty-day SHU confinement he suffered from sleep deprivation, stomach pain, vomiting, diarrhea, and nausea. Id. ¶¶ 23, 24.

## II. Legal Standard

## A. Motion to Dismiss

Under Rule 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However,

---

[2] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that

> *pro se* status does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff, 537

F.3d at 191-92 ("On occasions too numerous to count, we have reminded district courts that

'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.")

(internal citations omitted).

### III. Discussion[3]

### A. Fourteenth Amendment

Defendant moves to dismiss plaintiff's complaint arguing that plaintiff's: (1) Fourteenth

Amendment due process claim must fail as a matter of law; and (2) Article 78 proceeding

does not resolve the issues presently before the Court. See Dkt. No. 21-1. Plaintiff, in

response, again alleges that H.O. Harvey denied him a fair and impartial hearing that was

against the weight of the evidence in violation of the Fourteenth Amendment. Compl. ¶¶ 37-

39.

The Due Process Clause of the Fourteenth Amendment states: "[n]o State shall . . .

deprive any person of life, liberty, or property without due process of law." U.S. CONST.

amend. XIV § 1. To state a prima facie due process claim, "a plaintiff must establish (1) that

he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as

a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation

---

[3]All unpublished opinions cited to by the Court in this Report-Recommendation and Order, unless
otherwise noted, have been provided to plaintiff.

and quotation marks omitted); see Mitchell v. Keane, 974 F. Supp. 332, 342 (S.D.N.Y. 1997)

("To state a procedural due process claim challenging a disciplinary action, a prisoner must

allege *both* that he was deprived of a liberty interest cognizable under the Due Process

Clause, and that he was deprived of that interest without the requisite [procedural due]

process.") (emphasis added).


### 1. Liberty Interest

During his sixty days confined in SHU, plaintiff claims that (1) he was deprived of

access to the courts when his legal papers were not brought to SHU; (2) he was deprived of

sleep due to the constant cell light illumination which caused him headaches and blurred

vision; (3) he suffered stomach pain, vomiting, diarrhea, and nausea from the food; (4) he

suffered unhygienic conditions due to the cold shower water; and (5) he suffered a delay in his

vocational food service certification training. See Compl. ¶¶ 21-26.

An inmate has a protected liberty interest in being free from segregated confinement

but only where the alleged deprivation imposed amounts to an "atypical and significant

hardship in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472,

483-84 (1995). "Factors relevant to determining whether the plaintiff endured an 'atypical and

significant hardship' include 'the extent to which the conditions of the disciplinary segregation

differ from other routine prison conditions' and 'the duration of the disciplinary segregation

imposed compared to discretionary confinement.'" Davis v. Barrett, 576 F.3d 129, 133 (2d

Cir. 2009) (quoting Sandin, 515 U.S. at 484); see Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.

6

1999) (quoting <u>Sandin</u>, 515 U.S. at 486) ("Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous."). Plaintiff's sixty-day stay in SHU could only be said to have violated the Fourteenth Amendment if the conditions of his confinement were "atypical" or "significant." <u>Sandin</u>, 515 U.S. at 483-84.

### a. SHU Duration

Plaintiff alleges that he suffered "significant a-typical [sic] and undue hardship" during his sixty days in SHU confinement. Compl. ¶ 20. However, plaintiff was held for only sixty days, and such a short duration of confinement generally does not amount to an "atypical and significant hardship." <u>See</u> <u>Reynoso v. Selsky</u>, 292 F. App'x 120, 122-23 (2d Cir. 2008) (summary order) (internal citations omitted) ("We have previously held that 305 days of confinement under normal segregated housing unit conditions met the <u>Sandin</u> standard for atypicality and that a 101-day aggregated confinement in a highly-restrictive segregated housing of a New York correctional facility, without more, was not an atypical confinement."); <u>Borcsok v. Early</u>, 299 F. App'x 76, 78 (2d Cir. 2008) (summary order) ("Even if we include the eleven days that [the plaintiff] spent in the SHU before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant."); <u>Jackson v. Onondaga County</u>, 549 F. Supp. 2d 204, 218 (N.D.N.Y. 2008) (dismissing the plaintiff's procedural due process claim where the plaintiff alleged he was

confined to SHU for 49 days and experienced conditions normally associated with SHU). Thus, the length of plaintiff's SHU confinement alone does not set forth a constitutional violation. Assessment of the conditions of confinement is necessary to determine whether plaintiff had a protected liberty interest.

### b. SHU Conditions

Plaintiff alleges that, while confined in SHU, he was deprived of his court materials, and suffered sleep deprivation, stomach ailments due to the food, unhygienic conditions due to cold showers, and a delay in his vocational certification. See Compl. ¶¶ 21-26. The Second Circuit has held that SHU confinement of fewer than 101 days generally will not constitute an atypical and significant hardship implicating an inmate's liberty interest unless the conditions of confinement "were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Palmer v. Richards, 364 F.3d 60, 65 (2d Cir. 2004).

In assessing SHU conditions on a motion to dismiss, the Second Circuit stated:

> In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short — less than the 30 days that the Sandin plaintiff spent in SHU — and there was no indication that the plaintiff endured unusual SHU conditions.

Palmer, 364 F.3d at 65; see Davis v. Barrett, 576 F.3d 129, 135 (2d Cir. 2009) ("Here, the record lacks any evidence of the conditions for other inmates in administrative confinement, or in the general prison population . . . . A detailed factual record containing information as to

8

the actual conditions in both administrative segregation and for the general population is necessary for the court to make the type of comparison required."); see also Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997) ("[T]he decision in Sandin entailed careful examination of the actual conditions of the challenged punishment compared with ordinary prison conditions.").

Plaintiff's allegation that he was deprived of sleep because of cell lighting may result in an atypical confinement. See Tafari v. McCarthy, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights."). Similarly, plaintiff's claim of illness due to food may amount to an atypical or significant condition. Although a plaintiff's dislike of food or the occasional presence of spoiled food generally does not result in an atypical confinement, if a plaintiff alleged that his meals were regularly spoiled or improperly prepared, and as a result, he or she became sick, this would result in an atypical or significant hardship. See Lunney v. Brureton, No. 04 Civ. 2438 LAK GWG, 2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2006) ("Insofar as [the plaintiff] alleges that the food in the prison was merely cold, or that spoiled food was only served on a few occasions, he fails to state a case of action . . . . Here, however [the plaintiff] alleges that his meals were regularly spoiled and/or improper prepared . . . [and] eating the meals caused him to get sick . . . ."). Here, plaintiff's claim related to the food does not provide sufficient detail for the Court to determine, as a matter of law, that the quality or preparation of his food was an atypical or significant condition. Palmer, 364 F.3d at 65; Davis, 576 F.3d at 135.

Plaintiff's remaining claims, however, generally do not constitute atypical or significant

hardships. Plaintiff alleges that he suffered unhygienic conditions because the cold water prevented him from showering. Compl. ¶ 26. He claims that, because he did not shower due to the cold water, he became covered in "feces, urine, and musk excretements [sic] for over two weeks, while other SHU inmates received hot showers." Id. However, this claim does not establish a protected liberty interest. It is well-settled that "there is no liberty interest in a hot shower." Cantey v. Martuscello, No. 16-CV-1008 (TJM/CFH), 2017 WL 3190725, at *3 (N.D.N.Y. June 8, 2017); see Hodge v. Sidorowicz, No. 10 CIV. 428 (PAC/MHD), 2011 WL 6778524, at *20 (S.D.N.Y. Dec. 20, 2011), report and recommendation adopted by Hodge v. Sidorowicz, No. 10 CIV. 428 (PAC/MHD), 2012 WL 701150 (S.D.N.Y. Mar. 6, 2012) (finding that a failure to provide hot showers for inmates cannot "amount to a condition so severe and pervasive as to threaten inmate health or safety."). A cold shower, although uncomfortable, does not amount to a constitutional deprivation because "[i]nmates do not have a constitutional right to hot water." Cantey, 2017 WL 3190725, at *3 (citation omitted). Therefore, plaintiff's choice to remain in his feces and urine in lieu of taking a shower does not result in an atypical or significant hardship.

Further, plaintiff's allegation that he was deprived of access to the courts when his legal papers were not brought with his remaining property to SHU does not establish a protected liberty interest. See Pilgrim v. Bruce, No. 9:05-CV-198 (GLS/GHL), 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (finding that deprivation of access to law library because of disciplinary confinement does not result in an atypical confinement); Carter v. Carriero, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (holding that limited law library access due to SHU

disciplinary segregation does not result in an atypical, significant deprivation).[4]

Lastly, plaintiff's allegation that he was delayed in achieving his vocational certification fails to amount to an atypical condition of confinement because "a prisoner has no protected liberty interest in a particular job assignment." Frazier v. Coughlin, 81 F.3d 313, 318 (2d Cir. 1996). Moreover, plaintiff's inability to participate in a vocational problem does not hinder his ability to receive early release or parole because such claim is "speculative and fails to allege interference with a protected liberty interest." Nieves v. Prack, 172 F. Supp. 3d 647, 652 (W.D.N.Y. 2016) (internal citation and quotation marks omitted). Accordingly, plaintiff has not established that his lack of access to hot showers, his legal materials, and his vocational training amounted to an atypical or significant condition of confinement.

At this stage in the proceeding, plaintiff should be afforded the opportunity to further demonstrate the conditions of his confinement against that of the general prison population to determine whether his allegations that he suffered sleep deprivation and stomach ailments due to the food adequately establish a liberty interest. See Palmer v. Goss, No. 02 Civ. 5804(HB), 2003 WL 22327110, at *6 (S.D.N.Y Oct. 10, 2003). A detailed factual record would allow the Court to determine whether plaintiff's allegations were comparable with ordinary prison conditions. See, e.g., Samms v. Fischer, No. 9:10-CV-0349 (GTS), 2013 WL 5310215, at *7 (N.D.N.Y. Sept. 20, 2013) ("It is possible that 60 days in an unsanitary cell in

---

[4] Plaintiff did not raise a First Amendment access to the courts claim. However, even if he had, the undersigned observes, for purposes of this argument only, that such a claim would unlikely be successful, as plaintiff was in SHU – and a part from his legal materials – for only 60 days and does not allege that any of his legal cases were dismissed as a result of this temporary lack of access to his materials. See Harris v. Keane, 962 F. Supp. 397, 404-05 (S.D.N.Y. 1997).

SHU could (when compared with other cells and sentences) constitute an atypical and significant hardship in relation to the ordinary incidents of prison life sufficient to convey on a prisoner a protected liberty interest under the due process clause."). Although the undersigned concludes that plaintiff failed to demonstrate that his lack of access to hot showers, his legal materials, and his vocational training amounted to atypical or significant conditions of confinement, his sleep deprivation and food conditions arguably could rise to the level of atypical or significant. Because the factual record is not developed as to the full extent of plaintiff's alleged sleep deprivation and food conditions in SHU and plaintiff has alleged more than a speculative statement that he was deprived of his due process rights, the undersigned cannot conclude as a matter of law that plaintiff's conditions fail to allege a deprivation of a liberty interest as it relates to these conditions. Compare Smart v. Goord, 441 F. Supp. 2d 631, 641 (S.D.N.Y. 2006) (concluding that the plaintiff demonstrated deprivation of a liberty interest even though she was confined for only seventy days and failed to provide any detail as to the conditions of her confinement) with Smith v. Fischer, No. 9:07-CV-1264, 2009 WL 632890, at *7 (N.D.N.Y. Feb. 2, 2009) (internal citation and quotation marks omitted) (emphasis in original) (concluding that a liberty interest can be established at the motion to dismiss stage where the plaintiff "*alleged the existence of conditions in SHU far inferior to those prevailing in the prison in general*" rather than bare conclusory allegations "that [the plaintiff] served [his] SHU term under conditions more severe than normal SHU conditions."). Plaintiff's allegations relating to these two conditions of confinement *may*, upon further fact-

finding,[5] establish an atypical and significant hardship amounting to a protected liberty interest.

See Ortiz v. McBride, 380 F.3d 648, 655 (2d Cir. 2004) ("Based on these and [the plaintiff's]

other allegations relating to his treatment in SHU, we think that, if proved, they could establish

conditions in SHU 'far inferior' to those prevailing in the prison in general. We thus conclude

that [the plaintiff] has alleged that the ninety-day SHU sentence imposed on him was, under

the circumstances, a hardship sufficiently 'atypical and significant' to withstand a Rule 12(b)(6)

motion as to the first part of the due process test."); Smith v. Fischer, No. 9:07-CV-1264, 2010

WL 145292, at *7 (N.D.N.Y. Jan. 11, 2010) ("Here, the time Plaintiff spent in disciplinary

confinement was not 'exceedingly short' and the . . . complaint, read liberally, plausibly

suggests that Plaintiff endured unusual SHU conditions because Plaintiff has alleged that he

was deprived of medication, moved to a top bunk, and assaulted. Thus, under [Second

Circuit] precedents, a detailed factual record is required to determine whether Plaintiff was

deprived of a liberty interest."). Accordingly, the undersigned cannot conclude as a matter of

law, based on the current record, that plaintiff fails to allege the deprivation of a protected

liberty interest.[6]

---

[5] As will be discussed in the following subsection, because the undersigned concludes that plaintiff failed to demonstrate a denial of procedural due process, that plaintiff may be able to establish a protected liberty interest with respect to his conditions of confinement does not require a finding that this case survive the Motion to Dismiss as plaintiff must establish both a protected liberty interest and a denial of procedural due process to state a prima facie Fourteenth Amendment claim. See Mitchell, 974 F. Supp. at 342 ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege both that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process.") (emphasis added).

[6] In his Motion to Dismiss, defendant does not address whether plaintiff's SHU confinement implicated a liberty interest, nor does he concede that point. Dkt. No. 21-1 at 6.

## 2. Procedural Due Process

Assuming plaintiff has a protected liberty interest at stake, plaintiff's complaint fails to plausibly suggest that he was denied procedural due process protections at the Tier III disciplinary hearing. See Giano, 238 F.3d at 225 (noting that in order to state a prima facie due process violation, the plaintiff must establish that the defendant deprived the plaintiff of his or her liberty interest as a result of insufficient process). Although inmates retain their constitutional right to due process protections, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the fully panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Arce v. Walker, 139 F.3d 329, 335 (2d Cir. 1998) (holding that an inmate is entitled to minimal due process protections when being involuntary placed in administrative confinement).

> Certain due process protections therefore apply where disciplinary proceedings may lead to the loss of good time credit or would subject an inmate to solitary confinement in the SHU. Inmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken.

Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted).

### a. Notice

An accused inmate is required to receive advanced written notice of the charges against him. Sira v. Morton, 380 F.3d 57, 70 (2d Cir. 2004). Plaintiff was provided a copy of his misbehavior report on February 2, 2014, well before the commencement of this

disciplinary hearing on February 11, 2014. <u>See</u> Compl. ¶ 6; Dkt. No. 1-1 at 50. Therefore, plaintiff was provided with written notice of the charges of which he was accused in advance of his hearing, and was not denied procedural due process on this ground.[7]

### b. Fair and Impartial Hearing Officer

Plaintiff claims that he was denied a fair and impartial hearing officer because H.O. Harvey relied on "his own prosecutorial insertion" and "unsubstantiated evidence" in determining plaintiff's guilt. Compl. ¶¶ 37-39.    Plaintiff contends that H.O. Harvey's determination of guilt was based on his own quasi-prosecutorial functioning, when he stated to C.O. Lovely, "[Y]ou saw . . . movement under the sheet in the genital area." Compl. ¶ 14. It appears plaintiff is suggesting that H.O. Harvey was leading C.O. Lovely to a conclusion that she did not independently suggest. <u>Id.</u>

An inmate is entitled to a fair and impartial hearing officer to preside over his or her disciplinary hearing. <u>Sira</u>, 380 F.3d at 69. However, "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." <u>Francis v. Coughlin</u>, 891 F.2d 43, 46 (2d Cir. 1989). Instead, "due process requires only that the hearing officer not be a 'hazard of arbitrary decisionmaking.'" <u>Espinal v. Goord</u>, 180 F. Supp. 2d 532, 539 (S.D.N.Y. 2002) (quoting <u>Wolff</u>, 418 U.S. at 571). Due process is thereby satisfied so long as there is "some evidence" that substantiates the hearing officer's decision. <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985).

---

[7] Plaintiff does not allege that he was denied notice of his charges. <u>See generally</u> Compl.

Plaintiff's claim that C.O. Harvey inserted his own "prosecutorial" statement while questioning C.O. Lovely is not supported by the record. The disciplinary hearing transcript, which plaintiff attached to his complaint as an exhibit, shows that H.O. Harvey's question paraphrased C.O. Lovely's prior testimony:

> HARVEY: Okay, uh and were you able to see his hand or his hand movement?
>
> LOVELY: *I was able to see movement*
>
> HARVEY: Okay and the third question is what caused you to think that Logan was masturbating? In other words I guess thats [sic] he wants to see what you or describe what you saw?
>
> LOVELY: *because the lower [region] of where it is . . . the sheet was moving back and forth.*
>
> HARVEY: Okay, alright, so you didn't see . . . Okay, alright so there was a sheet there but *you saw . . . movement under the sheet in the genital area?*
>
> LOVELY: yes.

Dkt. No. 1-1 at 63-64 (emphasis added). H.O. Harvey's alleged "quasi-prosecutorial insertion" is nothing more than H.O. Harvey repeating the witness' testimony back to her to confirm her statement and ensure a clear and complete record. Id. That H.O. Harvey used a leading question does not mean that he guided C.O. Lovely's answer or engaged in any inappropriate or partial conduct during his questioning.

Plaintiff also claims that H.O. Harvey's reliance on "unsubstantiated evidence to determine guilt" violated his "due process right to a fair and impartial hearing." Compl. ¶ 39. The "some evidence" standard set forth by the Supreme Court of the United States "does not

require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56 (emphasis added).

After reviewing the complaint and its attachments, it is clear that plaintiff was afforded a fair and impartial hearing officer. The Tier III hearing transcript demonstrates that H.O. Harvey explained to plaintiff his rights and the hearing officer's obligations throughout the proceeding, read a copy of the misbehavior report into the record, and gave plaintiff ample time to respond to the allegations in the misbehavior report and call the appropriate witnesses. See Dkt. No. 1-1 at 50-69. Additionally, the transcript establishes that H.O. Harvey's determination of guilt was based on the "some evidence" standard set forth in Hill. 472 U.S. at 455. H.O. Harvey stated that, in making his determination, he relied on the following evidence:

> misbehavior report dated 2/2/14, written by C.O. Lovely, charging [plaintiff] with rule violations 107.10 interference with employee, 106.10 direct order, 101.20 lewd conduct, which alleges that as C.O. Lovely was making rounds . . ., she passed [plaintiff's] cell[,] observed [plaintiff] on [his] gate masturbating. She gave [plaintiff] a direct order to cease but [he] continued . . . . [O]ne testimony of [plaintiff's] witness Mendez . . . , who testified he over heard a conversation between [plaintiff] and C.O. Lovely where she indicated she did not observe [plaintiff] masturbating. Two C.O. Lovely who testified she observed [plaintiff] on [his] cell gate, with a sheet wrapped around [him] with rapid hand movement under the sheet in [his] crotch area.

Dkt. No. 1-1 at 68-69. Plaintiff appears to suggest that, because C.O. Lovely did not actually see his hand and genitals – as they were blocked by the sheet – it cannot be said that she

17

observed him masturbating.  Compl. ¶¶ 13-15.  Although plaintiff's version of the events presented a different picture of the incident, H.O. Harvey, although not required, "was entitled to make credibility determinations in rendering his decision and Plaintiff's own testimony to the contrary does not render the disposition unsupported by some evidence." Kotler v. Daby, No. 9:10-CV-136 (MAD/CFH), 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013) (citing Breazil v. Bartlett, 998 F. Supp. 236, 244 (W.D.N.Y.1997)).  The fact that C.O. Lovely relied on circumstantial evidence – plaintiff's hand moving back and forth near his genitals behind the sheet – to conclude that plaintiff was masturbating, but did not directly view his hand or genitals, does not preclude H.O. Harvey's guilty determination.  See generally Rudd v. Sargent, 866 F.2d 260, 262 (8th Cir.1989) (holding that corrections officer's misbehavior report constituted "some evidence" despite the officer not witnessing the violation).  The disciplinary hearing transcript does not support a finding that H.O. Harvey was anything other than a fair and impartial hearing officer, as there was ample evidence to support a guilty determination. See Blackshear v. Woodward, 9:13-CV-1165 (FJS/CFH), 2014 WL 2967752, at *10 (N.D.N.Y. July 1, 2014) (concluding that the hearing officer was fair and impartial because he "did not fail to view facts in a fair and neutral manner" or impose an atypical punishment.).  Therefore, plaintiff was afforded and fair and impartial hearing officer, and was not denied procedural due process on that basis.

### c. Reasonable Opportunity to Call Witnesses and Present Documentary Evidence

An inmate is entitled to a reasonable opportunity to call witnesses and present

documentary evidence at a hearing. Sira, 380 F.3d at 69. Here, plaintiff was given the opportunity to make opening and closing argument in support of his position. Dkt. No. 1-1 at 52-55, 67-68. Plaintiff also questioned the inmate housed nearest to him at the time of the alleged incident, as well as C.O. Lovely, who filed the initial misbehavior report. Id. at 58, 62. Plaintiff requested ten additional witnesses, and H.O. Harvey limited that number to four of plaintiff's choosing, advising plaintiff that, if necessary, he could add more witnesses after calling the first four. Id. at 56. When the first four witnesses refused to testify, H.O. Harvey asked if plaintiff had any other witnesses he wished to call, and plaintiff declined. Id. at 61. Therefore, plaintiff received a reasonable opportunity to call witnesses and present documentary evidence, and was not denied procedural due process on this ground.[8]

### d. Written Statement of Disposition

At the close of a disciplinary hearing, an inmate is entitled to a written statement of disposition disclosing the evidence the hearing officer relied on and the reasons for any disciplinary action taken. Sira, 380 F.3d at 69. It is clear from the disciplinary hearing transcript that H.O. Harvey read aloud and on-the-record his disposition, in which he stated the evidence on which he relied. Dkt. No. 1-1 at 68-69. Plaintiff does not allege that defendant failed to provide him with a copy of this disposition; in fact, plaintiff attached a copy of the transcript to his complaint. Id. at 2-3. Accordingly, plaintiff had received a written

---

[8] Plaintiff does not allege that he was denied an opportunity to call witnesses and present documentary evidence. See generally Compl. Further, the Court previously dismissed plaintiff's claim of lack of assistance in preparing for the hearing, as any prejudice was remedied when plaintiff was afforded the opportunity to question witnesses during the hearing. Dkt. No. 9 at 5-8.

statement of disposition. Therefore, plaintiff's procedural due process rights were not violated on this ground.

In sum, because plaintiff fails to demonstrate that his procedural due process rights were violated during the disciplinary proceedings, as he received notice of the charges against him, a fair and impartial hearing officer, a reasonable opportunity to call witnesses and present documentary evidence, and a written statement of the disposition, he has failed to demonstrate that he was denied procedural due process. Although plaintiff has arguably demonstrated a protected liberty interest, as plaintiff must demonstrate both a protected liberty interest and a denial of due process to state a Fourteenth Amendment violation, and plaintiff has not made this demonstration, he has not demonstrated a prima facie Fourteenth Amendment claim. See Mitchell, 974 F. Supp. at 342 ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege both that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process."). Accordingly, it is recommended that defendant's Motion to Dismiss be granted.

### B. Article 78 Proceeding

Defendant argues that plaintiff's Article 78 proceeding does not resolve the issues before the Court because the state standard for evidence in disciplinary hearings is "considerably stricter" than the federal standard. Dkt. No. 21-1 at 9. Plaintiff does not address this argument in his opposition. Although the undersigned recommends the

complaint be dismissed for failure to state a claim, this argument will be reviewed briefly for completeness.

In New York State, "[t]he focus of the court's inquiry therefore is . . . on whether [the evidence] is 'sufficiently relevant and probative' to constitute substantial evidence." Foster v. Coughlin, 76 N.Y.2d 964, 966 (1990) (internal citation omitted). The New York standard is more demanding than the federal "some evidence" standard. See Friedl v. City of N.Y., 210 F.3d 79, 85 (2d Cir. 2000). "Because the state standard is stricter, the reversal of a disciplinary ruling on administrative appeal or review by state court based on insufficient evidence does not necessarily establish an inmate's federal due process claim." Johnson v. Goord, 487 F. Supp. 2d 377, 382 n.1 (S.D.N.Y. 2007) (citing Sira, 380 F.3d at 76, n.9).

Here, plaintiff filed an Article 78 proceeding in state court challenging the April 23, 2014 affirmation of his disciplinary hearing determination. Compl. ¶ 19; Dkt. No. 21-1 at 6. Defendant H.O. Harvey was not named a respondent in the Article 78 proceeding. Dkt. No. 1-1 at 18. On January 9, 2015, DOCCS reviewed and administratively reversed plaintiff's February 14, 2014 disciplinary hearing determination. Id. at 13. Thereby, plaintiff's Article 78 proceeding was dismissed as moot. Id. at 14-15. Neither DOCCS' reversal nor the dismissal of the Article 78 proceeding resolve the issues presently pending before the Court because the reversal of plaintiff's disciplinary hearing "does not automatically establish [his] federal claim." Sira, 380 F.3d at 76, n.9. "[I]t is federal constitutional standards, not state law or regulations, that define the requirements of procedural due process," and plaintiff's claim cannot be resolved by state regulations. Israel v. Bradt, 228 F. Supp. 3d 237, 240 (W.D.N.Y.

2017) (quoting <u>Johnson v. Goord</u>, 487 F. Supp. 2d 377, 385 (S.D.N.Y. 2007)). Therefore, neither the DOCCS' reversal nor the Article 78 dismissal resolve the issues before the Court, and the Court must properly make its own determination to resolve the claims pending in this § 1983 action.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion to Dismiss (Dkt. No. 21) be **GRANTED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED in its entirety with prejudice**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fᴇᴅ R. Cɪᴠ. P. 6(a), 6(e), 72.

**IT IS SO ORDERED**.

Dated: September 25, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge